UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
AKRAM SAFADI,                           )
                                        )
                Plaintiff,              )
                                        )
        v.                              )   Case Number:  1:07CV1817 (RMC)
                                        )
PAUL NOVAK, Director,                   )
Vermont Service Center,                 )
United States Citizenship & Immigration )
Services, et al.,                       )
                                        )
                Defendants.             )
_____ )

## MOTION TO DISMISS

Defendants Paul Novak, et al., through undersigned counsel, hereby move that this case be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The United States District Court for the Eastern District of Virginia held that federal district courts lacked jurisdiction to review Plaintiff's challenge to the pace of Defendant United States Citizenship and Immigration Services' adjudication of his application for permanent residency status. See Safadi v. Howard, 466 F. Supp. 2d 696 (E.D.V.A. 2006).  That Court's ruling has issue preclusive effect concerning this Court's jurisdiction to review Plaintiff's claim, and bars Plaintiff from re-litigating the same jurisdictional question here.  This case must therefore be dismissed for lack of jurisdiction.

A supporting memorandum and proposed order are submitted herewith.

Dated: January 15, 2008

Respectfully submitted,

/s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

/s/ Robin M. Meriweather
ROBIN M. MERIWEATHER, D.C. Bar # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C. 20530
Phone: (202) 514-7198
Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

OF COUNSEL:

Bridgette H. Parascando
Associate Counsel
USCIS Vermont Service Center

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
)
AKRAM SAFADI, )
)
Plaintiff, )
)
v. ) Case Number: 1:07CV1817 (RMC)
)
PAUL NOVAK, Director, )
Vermont Service Center, )
United States Citizenship & Immigration )
Services, <u>et</u> <u>al.</u>, )
)
Defendants. )
_____ )

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Plaintiff Akram Safadi seeks an order from this Court compelling Defendant United States Citizenship and Immigration Services ("USCIS") to complete its adjudication of his Form I-485 application for adjustment of status to that of a lawful permanent resident. <u>See</u> Complaint ¶ 1. He filed a nearly identical complaint in the Eastern District of Virginia in 2006, which was dismissed for lack or subject matter jurisdiction. <u>See</u> <u>Safadi v. Howard</u>, 466 F. Supp. 2d 696 (E.D.V.A. 2006). That ruling precludes Plaintiff from relitigating the same jurisdictional issues before this Court. Accordingly, his complaint must be dismissed for lack of jurisdiction.

## BACKGROUND

Plaintiff is a Lebanese citizen who seeks lawful permanent resident status. <u>See</u> Compl. ¶¶ 1, 13. His application was filed with the USCIS Texas Service Center in November 2002. <u>See</u> <u>id.</u> ¶ 17. The application was subsequently transferred to the USCIS Vermont Service Center. <u>See</u> <u>id.</u> ¶ 19.

The Vermont Service Center is adjudicating Plaintiff's adjustment application. It has requested and/or performed security checks and background-related inquiries including fingerprinting, a check of the Interagency Border Inspection System, and FBI name checks. See See Declaration of Keith Canney, ¶¶ 8-10 (Exh. 1). The FBI name checks were initiated December 3, 2002 and November 29, 2006, and responses were received on or around August 6, 2003 and January 23, 2007, respectively. See id. ¶ 8. However, after receiving the results of the security checks performed upon Plaintiff, USCIS determined that further inquiries were necessary. See id. ¶ 11. USCIS is continuing to investigate those issues, and to assess Plaintiff's eligibility for lawful permanent residency status. See id. On December 7, 2007, USCIS requested that Plaintiff submit further evidence pertinent to the I-140 visa petition filed on his behalf. See id. ¶ 12. USCIS is still awaiting a response to that request. See id. ¶ 13.

### STANDARD OF REVIEW

When reviewing a motion to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), a court generally must accept as true all material allegations of the complaint and must construe the complaint in the light most favorable to the complaining party. Warth v. Seldin, 422 U.S. 490, 501 (1975). But where a motion to dismiss challenges the factual basis for a court's jurisdiction, the court "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." Phoenix Consult., Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000); see also Herbert v. Nat'l Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992) (when reviewing a motion to dismiss pursuant to Rule 12(b)(1), a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence); Rann v. Chao, 154 F. Supp. 2d 61, 64 (D.D.C. 2001), aff'd, 346 F.3d 192 (D.C. Cir. 2003). A court's consideration of

2

that extrinsic information does not convert a Rule 12(b)(1) motion to dismiss into a motion for summary judgment. See Phoenix Consult., Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000); Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987). "The plaintiff bears the burden of persuasion to establish subject matter jurisdiction by a preponderance of the evidence." Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp.2d 15, 19 (D.D.C. 1998).

## ARGUMENT

Defendants seek dismissal for lack of subject matter jurisdiction. As numerous district courts have recognized, Section 1252(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(a), deprives courts of jurisdiction over challenges to the I-485 adjudication process, including challenges to the pace at which USCIS completes its adjudication. See, e.g., Luo v. Keisler, __ F. Supp. 2d ___, 2007 WL 3357241, at *1-*2 (D.D.C. Nov. 14, 2007); Orlov v. Howard, __ F. Supp. 2d ___, 2007 WL 4293490, at *9 (D.D.C. Dec. 10, 2007); Grinberg v. Swacina, 478 F. Supp. 2d 1350 (S.D. Fla. 2007); Safadi v. Howard, 466 F. Supp. 2d 696 (E.D.V.A. 2006). Specifically, section 1252(a) provides that no federal court may review USCIS's discretionary actions and decisions. See 8 U.S.C. § 1252(a)(2)(B)(ii). Plaintiff's case falls squarely within that jurisdictional bar, because the adjudication of an I-485 is committed to USCIS's discretion, and Plaintiff seeks to compel USCIS to complete that adjudication.[1]

The doctrine of issue preclusion (collateral estoppel) bars Plaintiff from contesting Defendants' jurisdictional defense (and hence from bringing this suit), because the United States District Court for the Eastern District of Virginia already has determined that federal district

---

[1] The complaint also requests an order compelling USCIS to adjudicate an application for travel authorization. See Compl. ¶ 5. However, that was approved October 24, 2007, thereby rendering that aspect of the complaint moot. See Canney Decl. ¶¶ 14-15; Bouguettaya v. Chertoff 472 F.Supp.2d 1, 2 (D.D.C. 2007) (finding alien's request for writ of mandamus to compel CIS to

3

courts lack jurisdiction to review his claims.  See Safadi, 466 F. Supp. 2d at 699.  Under that doctrine, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."  Yamaha Corp. of Amer. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992); see also Nextwave Personal Communications, Inc. v. FCC, 254 F.3d 130, 147 (D.C. Cir. 2001) ("a final judgment on the merits in a prior suit precludes subsequent relitigation of issues actually litigated and determined in the prior suit, regardless of whether the subsequent suit is based on the same cause of action."), aff'd on other grounds, 537 U.S. 293 (2003); IAM Nat'l Pension Fund, 723 F.2d at 947 (same).  There are three elements necessary for issue preclusion:

> (1) the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case; (2) the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case; and (3) preclusion in the second case must not work a basic unfairness to the party bound by the first determination.

Yamaha Corp., 961 F.2d at 254.  The doctrine protects the finality of judgments, and "is intended to free courts and parties from the onerous and unnecessary task of relitigating issues that already have been decided in a full and fair proceeding."  McLaughlin v. Bradlee, 803 F.2d 1197, 1204 (D.C. Cir. 1986).  The defense of issue preclusion may be invoked by parties that were not involved in the prior proceedings.  See McLaughlin, 803 F.2d at 1204.

A court's rulings on jurisdictional issues have collateral estoppel, or issue preclusive, effect upon future litigation raising the same jurisdictional question.[2]  See GAF Corp., 818 F.2d 901, 912-13 (D.C. Cir. 1987).  Further, "if a court makes a substantive determination in order to

---

process application was moot because application was denied following filing of the action).
[2] Jurisdictional rulings do not have claim preclusive effect, because they are not decisions on the merits.  See Nextwave, 254 F.3d at 143.

arrive at a jurisdictional holding, the substantive determination can have issue preclusive effect so long as it was 'actually litigated and determined in the prior action.'" Nextwave, 254 F.3d at 148. The D.C. Circuit has recognized a limited exception to issue preclusion, known as the "curable defect" exception, which applies when events subsequent to the original dismissal remedy the jurisdictional deficiency that existed in the prior case. GAF Corp., 818 F.2d at 264 & n. 74; Dozier v. Ford Motor Co., 702 F.2d 1189, 1192-93 (D.C. Cir. 1983).

All three elements of issue preclusion are present in this case. In Safadi, Defendants sought dismissal for lack of subject matter jurisdiction, and the parties fully briefed the jurisdictional issues. See Safadi, 466 F. Supp. 2d at 696-697. The Court carefully examined the parties' arguments, and concluded that Section 1252(a)(2)(B)(ii) barred judicial review of Plaintiff's claims. Specifically, the Court held that Section 1252(a)(2)(B)(ii) "precludes judicial review of any 'action,' meaning any act or series of acts, included within the ongoing adjudication process and the pace at which that action proceeds." Id. at 700. The Court also held that neither the Administrative Procedures Act nor the federal mandamus statute conferred jurisdiction to review Plaintiff's claims, because the USCIS adjudicative process involved discretionary actions. See id. at 700-01. Thus it is clear that the Eastern District of Virginia 'actually and necessarily decided' the jurisdictional issues presented in this case. Giving preclusive effect to that ruling would be eminently fair, as Plaintiff had a full opportunity and every incentive to litigate the prior case, and was represented by counsel in the prior action.

The "curable defect" exception to issue preclusion does not apply here. That exception comes into play when a change in facts occurs after the dismissal which cures the jurisdictional defect on which the prior dismissal was founded. See Newdow v. Bush, 355 F. Supp. 2d 265, 275 (D.D.C. 2005). For example, if a case were dismissed for lack of standing, and events that

postdate the dismissal give the plaintiff a sufficient interest in the case (i.e., a more concrete injury), the "curable defect" doctrine might permit the plaintiff to relitigate the jurisdictional issue.  See id.  There have been no such changes since the Eastern District of Virginia issued its ruling in December 2006.  As was true then, USCIS has determined that "issues remain requiring further inquiry" in light of the results of the security investigation and name check performed on Plaintiff.  Safadi, 466 F. Supp. 2d at 697-98; see Canney Decl., ¶ 11.  USCIS "is currently reviewing additional information and has not finally adjudicated [P]laintiff's complaint."  Safadi, 466 F. Supp. 2d at 698; see Canney Decl. ¶ 11.  The evidence indicates that USCIS "is actively processing [P]laintiff's application."  Safadi, 466 F. Supp. at 701; see Canney Decl. ¶¶ 8-13 (describing USCIS's adjudicatory actions including its request that Plaintiff submit additional evidence).  In sum, the facts that influenced the Eastern District of Virginia's jurisdictional ruling remain true, and no jurisdictional defect has been cured.

## CONCLUSION

For the foregoing reasons, Defendants move that this case be DISMISSED.


Dated: January 15, 2008                    Respectfully submitted,

                                           /s/
                                           JEFFREY A. TAYLOR, D.C. BAR # 498610
                                           United States Attorney

                                           /s/
                                           RUDOLPH CONTRERAS, D.C. BAR #434122
                                           Assistant United States Attorney

           /s/ Robin M. Meriweather
        ROBIN M. MERIWEATHER, D.C. Bar # 490114
        Assistant United States Attorney
        555 Fourth St., N.W.
        Washington, D.C.  20530
        Phone: (202) 514-7198
        Fax: (202) 514-8780
        Robin.Meriweather2@usdoj.gov


OF COUNSEL:

Bridgette H. Parascando
Associate Counsel
USCIS Vermont Service Center

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
AKRAM SAFADI,                              )
                                                    )
                    Plaintiff,                     )
                                                    )
          v.                                        )   Case Number:  1:07CV1817 (RMC)
                                                    )
PAUL NOVAK, Director,                 )
Vermont Service Center,               )
United States Citizenship & Immigration )
Services, et al.,                             )
                                                    )
                    Defendants.                )
_____)

**ORDER**

Upon consideration of Defendants' Motion to Dismiss, it is this _____ day of

_____, 2008,

ORDERED that Defendants' Motion to Dismiss be and hereby is GRANTED.

It is further ORDERED that this case is DISMISSED.

SO ORDERED.

                                                                    _____
                                                                    United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AKRAM SAFADI )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PAUL NOVAK, DIRECTOR )<br>VERMONT SERVICE CENTER, )<br>U.S. CITIZENSHIP AND )<br>IMMIGRATION SERVICES; )<br>)<br>EMILIO T. GONZALEZ, )<br>DIRECTOR U.S. CITIZENSHIP AND )<br>IMMIGRATION SERVICES; )<br>)<br>MICHAEL CHERTOFF, )<br>SECRETARY U.S. DEPARTMENT OF )<br>HOMELAND SECURITY; )<br>)<br>Defendants. ) | Civil Action No: 1:07cv01817 |

## DECLARATION OF KEITH CANNEY

I, Keith Canney, hereby declare:

I am the Functional Manager for the Vermont Service Center, United States Citizenship and Immigration Services (USCIS) in the Department of Homeland Security.

 1)     I have been employed by USCIS or its successor agency, the Immigration and Naturalization Service, since 1992.

 (2)     In this capacity, and based upon reasonable inquiry and my knowledge of the case of Akram Safadi, including but not limited to the applicant's administrative file (A96 287 866), I state the following:

 (3)     When a lawful permanent resident alien applies for adjustment of status, USCIS conducts several forms of security and background checks to ensure that the alien is eligible for the benefit and that he or she is not a risk to national security or public

safety. In addition to record checks against DHS's own immigration systems, these background checks currently include (a) a Federal Bureau of Investigation (FBI) fingerprint check for relevant criminal history records on the alien (e.g., arrests and convictions); (b) a check against the DHS-managed Interagency Border Inspection System (IBIS) that contains records and "watch list" information from more than twenty federal law enforcement and intelligence agencies; and (c) an FBI name check, which is run against FBI investigative databases containing information that is not necessarily revealed by the FBI's fingerprint check or IBIS. IBIS includes, but is not limited to, information related to persons who are wanted or under investigation for serious crimes or suspected of terrorism-related activity. No immigration benefit (e.g., adjustment of status, naturalization/U.S. citizenship) is granted unless and until all the above-required background checks have been completed and resolved.

(4) These law enforcement checks have revealed significant derogatory information on alien applicants for immigration benefits, including applicants seeking adjustment of status, which has resulted in the alien being found ineligible for the benefit and USCIS's denial of the application. In many instances, the disqualifying information on the alien has been discovered as a result of the IBIS or FBI name checks, but it has not been revealed by a fingerprint check alone.

(5) If a background or security check reveals verified derogatory information on the alien (i.e., a positive result), the USCIS works with other divisions of DHS and other law enforcement and intelligence agencies, as necessary, to obtain all available information concerning the derogatory record. Depending on the information, DHS/ICE may place the alien in immigration proceedings to remove him or her from the United States.

(6) Although the alien's file may show that an FBI fingerprint check was performed, the fingerprint checks frequently do not reveal the types of derogatory information described above, particularly when it is not information that has resulted in an arrest or criminal conviction. For example, persons on a "watch list" who are suspected of terrorist activity will not necessarily be identified through an FBI fingerprint check, but could be identified through an IBIS record check or an FBI name check of investigation databases.

(7) It would be unconscionable and potentially risk the safety and security of the nation for USCIS to grant United States lawful permanent resident status without ensuring that the government's law enforcement databases do not contain verified derogatory information about the alien. With lawful permanent resident status, a person who is a risk to the public or the nation's security could obtain work in sensitive industries and travel on transportation carriers more easily.

(8) FBI name checks were initiated on the applicant on or around December 3, 2002 and November 29, 2006. USCIS received the name check responses from the FBI on or around August 6, 2003 and January 23, 2007, respectively.

(9) FBI fingerprint checks of the applicant were initiated on or around February 12, 2003, August 31, 2004 and November 23, 2007. USCIS received the results of the fingerprint checks from the FBI on or around February 12, 2003, August 31, 2004 and November 23, 2007, respectively.

(10) IBIS checks were initiated on the applicant and responses received on or around June 2006, September 2006 and November 2007.

(11) Following these security checks, there are issues requiring further inquiry by USCIS to determine the applicant's eligibility for lawful permanent residence status. USCIS is continuing to review information and to evaluate the eligibility of the applicant for lawful permanent residence status.

(12) On December 7, 2007, USCIS issued a Notice of Action, Form I-797, requesting additional information related to petitioner International Community Marketing's immigrant visa petition for alien worker, Form I-140, filed on behalf of applicant.

(13) USCIS is currently awaiting a response to the Notice of Action dated December 7, 2007.

(14) Applicant filed an Application for Travel Authorization, Form I-131, with USCIS on February 13, 2005.

(15) USCIS approved applicant's Form I-131 on October 24, 2007. It is valid until October 23, 2008.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 9th of January, 2008.

_____
Keith Canney
Functional Manager for the
Vermont Service Center
U.S. Citizenship and Immigration Services
U.S. Department of Homeland Security