# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **AKRAM SAFADI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 07-1817 (RMC)** |
| | ) | |
| **PAUL NOVAK, Director, Vermont Serv. Ctr., U.S. Citizenship and Immigration Servs.,** *et al.***,** | ) ) ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Akram Safadi, a Lebanese citizen, applied to adjust his status from alien to permanent resident of the United States on November 18, 2002. When nothing happened, he filed suit in the United States District Court for the Eastern District of Virginia, seeking to compel the United States Citizenship and Immigration Services ("CIS") to act on his application. That court dismissed his case on December 20, 2006, for lack of subject matter jurisdiction, *see Safadi v. Howard*, 466 F. Supp. 2d 696 (E.D. Va. 2006), perceiving the complaint to seek judicial review of discretionary agency action which is not subject to court review. Still without adjudication of his 2002 application, Mr. Safadi tries again in this Court now. Mr. Safadi's remedy for the adverse decision in the Eastern District of Virginia was to appeal. He is estopped from bringing the same suit in a different court.

## I. BACKGROUND

Mr. Safadi is a Lebanese citizen who seeks lawful permanent resident status in the United States. *See* Verified Compl. for Mandamus & Declaratory J. ("Compl.") ¶¶ 1, 13 [Dkt. # 1].

Mr. Safadi filed his Application to Adjust Status to Lawful Permanent Resident with the CIS Texas Service Center on November 18, 2002.  *Id.* ¶ 17.  CIS issued a receipt notice for his application on December 6, 2002.  *Id.* ¶ 18.  On December 11, 2003, the CIS Texas Service Center forwarded Mr. Safadi's application to the CIS Washington Field Office, which then transferred his application to the CIS Vermont Service Center on January 21, 2005.  *Id.* ¶ 19.  As the months and years passed, Mr. Safadi continued to make telephonic and in-person inquiries to CIS regarding the status of his application.[1]  *Id.* ¶ 21.  On May 10, 2006, after being told on numerous occasions that his application was still under review, Mr. Safadi wrote a letter to the CIS Washington Field Office and the CIS Vermont Service Center to request adjudication of his pending application.  *Id.* ¶ 24.  He received no response.  *Id.*

On September 15, 2006, Mr. Safadi filed a complaint for mandamus under 28 U.S.C. § 1361 with the U.S. District Court for the Eastern District of Virginia, Alexandria Division, requesting that the court compel CIS to adjudicate his application for adjustment of status without further delay.  *Id.* ¶ 25 (citing Verified Compl. for Mandamus & Declaratory J., *Safadi v. Howard*, No. 06-cv-1055 (E.D. Va. Sept. 15, 2006)).  On December 20, 2006, Judge T.S. Ellis, III, granted the defendants' motion to dismiss, deciding that the court lacked subject matter jurisdiction over Mr. Safadi's complaint because 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review of any agency "'action'" relating to the adjustment application process, including the pace at which the process proceeds.  *Safadi v. Howard*, 466 F. Supp. 2d at 699-700 (citing 8 U.S.C. § 1252(a)(2)(B)(ii)).  Mr.

---

[1] On February 13, 2005, Mr. Safadi filed an Application for Travel Authorization with the CIS Vermont Service Center.  Compl. ¶ 20.  He repeatedly inquired about that application as well, and his suit in the Eastern District of Virginia included a request that CIS be compelled to adjudicate that application without further delay.  *Id.*

Safadi then filed the instant suit in this Court on October 9, 2007. He alleges that during the course of another mandamus action, in which he requested that the U.S. District Court for the District of Vermont compel CIS to adjudicate his Application for Employment Authorization, he discovered that on several occasions CIS was unable to locate the immigrant visa petition (Form I-140) on which Mr. Safadi's adjustment of status application is based. *See* Compl. ¶ 29. He contends that this is the possible source of delay in adjudicating his application status. *See id.* The Defendants have filed a Motion to Dismiss [Dkt. # 10] the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

## II.  LEGAL STANDARDS

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)). On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *Rasul v. Bush*, 215 F. Supp. 2d 55, 61 (D.D.C. 2002) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)). The court may dismiss a complaint for lack of subject matter jurisdiction only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

When reviewing a motion to dismiss for lack of subject matter jurisdiction, a court generally must accept as true all material allegations of the complaint and must construe the complaint in the light most favorable to the plaintiff. *Warth v. Seldin*, 422 U.S. 490, 501 (1975). But because subject matter jurisdiction focuses on the court's power to hear the claim, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). The court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). A court's consideration of such extrinsic information does not convert a Rule 12(b)(1) motion to dismiss into a motion for summary judgment. *See Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).

### III. DISCUSSION

Mr. Safadi alleges that CIS has unreasonably failed to perform its duty to adjudicate his adjustment of status application. *See* Compl. ¶ 31. Defendants move to dismiss because this issue has already been decided in the U.S. District Court for the Eastern District of Virginia, and the doctrine of collateral estoppel therefore bars Mr. Safadi from re-litigating the issue before this Court. Mr. Safadi concedes that the jurisdictional issue has already been litigated, but argues that the "curable defect" exception to the doctrine of collateral estoppel establishes jurisdiction. Pl.'s Opp'n to Defs.' Mot. to Dismiss at 1 ("Pl.'s Opp'n") [Dkt. # 12]. He relies on a new fact that has emerged

subsequent to the dismissal of the complaint in the Eastern District of Virginia: CIS informed that court that the delay in adjudicating his application was solely attributable to security concerns, but Mr. Safadi has since learned that the delay was caused, at least in part, by Defendants' loss of key visa petitions and related documents. *See* Compl. ¶ 29; Pl.'s Opp'n at 2. The question, therefore, is whether this new fact constitutes a cure to the defect in jurisdiction found by the Eastern District of Virginia.

Under the doctrine of collateral estoppel, or issue preclusion, an issue of fact or law that was actually litigated and necessarily decided is conclusive in a subsequent action between the same parties or their privies. *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Yamaha Corp. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992). Like *res judicata*, collateral estoppel relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, prevents inconsistent decisions, and encourages reliance on adjudication. *Montana v. United States*, 440 U.S. 147, 153-54 (1979). Issue preclusion applies to dismissal for lack of jurisdiction as well as for other grounds. *See Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1191 (D.C. Cir. 1983); *see also GAF Corp. v. United States*, 818 F.2d 901, 912 (D.C. Cir. 1987) ("The judgment ordering dismissal[] will . . . have preclusive effect as to matters actually adjudicated; it will, for example, preclude relitigation of the precise issue of jurisdiction that led to the initial dismissal.")[2]; *accord* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4402 (2d ed. 2008) (explaining that

---

[2] The issue presented in both *Dozier* and *GAF* was whether *res judicata* barred a subsequent suit, but both cases recognized that issue preclusion barred relitigation of the specific jurisdictional issue that was decided in a previous suit between the parties. *See GAF*, 818 F.2d at 913 n.75 (noting that "[t]he *res judicata* effects of a prior judgment dismissing for lack of jurisdiction have variously been discussed in terms of issue preclusion and estoppel," and then mentioning *Dozier* as one such case where issue preclusion was invoked to dismiss a case for lack of jurisdiction).

dismissal of a suit for lack of federal subject matter jurisdiction precludes relitigation of the same issue of subject matter jurisdiction in a second federal suit on the same claim). The doctrine only applies when the issues presented in each matter are identical. *See* 18 James W. Moore, et al., Moore's Federal Practice § 132.02[2][3], at 27-29 (3d ed. 2008) ("The basic rule, that issue preclusion applies only if the issue in the prior litigation is identical to the issue in the subsequent litigation, entails the corollary that a difference in pertinent facts, sufficient to substantially change the issue, renders the doctrine of issue preclusion inapplicable.").

Consistent with the principle that collateral estoppel applies only when the facts pertinent to a previously-litigated issue are identical in the subsequent suit, the D.C. Circuit has recognized a "curable defect" exception to the doctrine of collateral estoppel. In *Dozier*, for example, the Circuit explained that the "curable defect" exception applies where a "'precondition requisite' to the court's proceeding with the original suit was not alleged or proven, and is supplied in the second suit." 702 F.2d at 1192 (citing *Costello v. United States*, 365 U.S. 265, 284-88 (1961)). Where a case is dismissed for lack of jurisdiction, a "curable defect" is one in which the "jurisdictional deficiency [found by the court in the original suit] could be remedied by *occurrences subsequent to the original dismissal*." *Dozier*, 702 F.2d at 1192 (emphasis in original). In other words, the new fact or occurrence must satisfy a prerequisite to jurisdiction that was lacking in the original suit.

When the new fact or occurrence fails to remedy the jurisdictional deficiency for which the claim was previously dismissed, however, collateral estoppel precludes a second lawsuit. *Newdow v. Bush*, 355 F. Supp. 2d 265 (D.D.C. 2005), provides a good example of this principle. The plaintiff in that case sought a declaratory judgment and preliminary injunction in the U.S.

District Court for the District of Columbia to prohibit the inclusion of religious prayers at the 2001 Presidential Inauguration. *Id.* at 268. He had previously challenged the use of inaugural prayers in the U.S. District Court for the Eastern District of California. *See Newdow v. Bush*, No. CIV S-01-218 (E.D. Cal. 2001). The Eastern District of California dismissed that suit, concluding that, although the plaintiff had Article III standing to bring the suit, federal courts lack constitutional authority to regulate the Presidential Inauguration. *Id.* (District Court, May 23, 2002 Order dismissing case), *aff'd*, 2004 WL 334438, at *1 (9th Cir. Feb. 17, 2004) (holding that the plaintiff lacked Article III standing to bring the suit because he did not allege a sufficiently concrete and specific injury).

In the D.C. District Court action, Mr. Newdow sought a preliminary injunction to prohibit the inclusion of religious prayers at the 2005 Presidential Inauguration. *Newdow*, 355 F. Supp. 2d at 267-68, 270-71. The D.C. District Court identified two "'occurrences' that [had] arisen since the February 2004 decision by the Ninth Circuit": first, Mr. Newdow alleged a prospective injury arising from the 2005 Presidential Inauguration, not a past injury from the 2001 Presidential Inauguration; and second, he planned to attend the 2005 Presidential Inauguration in person, and not just watch it on television, as he had in 2001. *Id.* at 275 (citation omitted).

Nonetheless, the D.C. District Court held that these new facts did not trigger the curable defect exception to collateral estoppel because they did not remedy the "jurisdictional deficiency" in Mr. Newdow's prior suit. *Id.* at 275-76. The new facts neither gave him standing to bring his suit nor rectified the court's lack of constitutional authority to regulate a Presidential Inauguration. *Id.* Therefore, the second suit was subject to collateral estoppel and dismissed. *See also Lowe v. United States*, 79 Fed. Cl. 218, 229-31 (Ct. Fed. Cl. 2007) (holding that the curable

defect exception did not apply because the new fact was irrelevant to the issue of whether the court had subject matter jurisdiction, and therefore could not cure the jurisdictional deficiency found in the prior case).

In Mr. Safadi's prior case, the District Court for the Eastern District of Virginia held that the court lacked subject matter jurisdiction over Mr. Safadi's action because 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review of the discretionary decisions and actions of CIS, including the pace at which CIS handles applications for status adjustment. *See Safadi v. Howard*, 466 F. Supp. 2d at 700. Mr. Safadi's new information does not address or cure this defect in jurisdiction. He asserts that the Defendants informed the Eastern District of Virginia court that only security clearances were blocking adjudication of Mr. Safadi's application when, in fact, CIS had lost critical documents submitted by him. *See* Compl. ¶ 29; Pl.'s Opp'n at 2. In either event, the court's analysis would have precluded judicial review because the court held that Congress deprived the courts of subject matter jurisdiction over status adjustment applications, including the application procedures and the pace of the application review process. *See Safadi v. Howard*, 466 F. Supp. 2d at 700. The court concluded that application procedures are within the discretion of CIS and not subject to judicial oversight. *See id.* The nature or cause of the delay was not dispositive; rather, the court held that it must defer to CIS's discretion in how to operate the application process altogether. *See id.* Thus, Mr. Safadi's recent discovery that CIS's loss of key visa documents may have caused the delay in processing his adjustment of status application does not alter the jurisdictional analysis and cannot cure the jurisdictional deficiency identified in Mr. Safadi's prior suit. Mr. Safadi's recourse would have been to appeal that decision; he did not do so.

**IV.  CONCLUSION**

Because the Eastern District of Virginia did not base the dismissal of Mr. Safadi's initial mandamus action on the legitimacy of the reason provided by CIS for the delayed handling of his application, the new information that the delay was caused (or compounded) by other reasons is not germane to the jurisdiction analysis.  Mr. Safadi is estopped from litigating the same issue against the same Defendants in a new court.  Accordingly, the complaint must be dismissed.  A memorializing order accompanies this memorandum opinion.


Date: September 2, 2008                              _____/s/_____
                                                    ROSEMARY M. COLLYER
                                                    United States District Judge